1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11  CHRISTINE GARZA, individually and on behalf of all others similarly situated,

Case No. 1:24-cv-00012-JLT-CDB

12      Plaintiff,

ORDER GRANTING MOTION TO DISMISS

13      v.

(Doc. 8)

14

15  SPECTRUM BRANDS PET LLC,

16      Defendant.

17

**I.      INTRODUCTION**

18      Before the Court is Spectrum Brands Pet LLC's motion to dismiss Christine Garza's

19  complaint.  (Doc. 8.)  For the reasons set forth below, Defendant's motion to dismiss is granted.

20

**II.      BACKGROUND**

21      In January 2023, Plaintiff purchased a package of Defendant's DreamBone Dream

22  Kabobz dog chews.  (Doc. 1, ¶¶ 11; Doc. 8 at 8.)  Plaintiff relied on the front label, which

23  included language that the dog chews are "made with real chicken, pork, & duck" and cartoon

24  images of a whole chicken, duck legs, and a pork chop, to select and purchase Defendant's

25  product.  (Doc. 1, ¶¶ 18–19.)  Plaintiff alleges that she reasonably believed the dog chews were

26  primarily made of meat but later recognized that "[c]ontrary to the labeling and packaging of the

27  Product, the featured meats are not the predominant ingredients."  (Doc. 1, ¶¶ 19–20.)  Plaintiff

28  alleges that had she known the dog chews were not predominantly made with meat, she would not

1

1   have purchased the product or would have paid significantly less for them.  (Doc. 1, ¶¶ 3–4, 20.)

2   Based on these alleged misrepresentations, Plaintiff seeks to represent a class of all individuals

3   who purchased the dog chews in California for recovery of damages, restitution, disgorgement,

4   punitive damages, and injunctive relief.  (Doc. 1, ¶ 33.)

5                    **III.    JUDICIAL NOTICE**

6          Defendant requests this Court take judicial notice of the packaging artwork for the dog

7   chews, including both the front and back product labels.  (Doc. 9 at 2.)  Plaintiff incorporated the

8   front label in her complaint, and therefore Defendant requests the Court take judicial notice of the

9   remainder of the entire packaging.  (*Id.*)  The Court may consider a document if "the plaintiff

10  refers extensively to the document or the document forms the basis of the plaintiff's claim."

11  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Knievel v. ESPN*, 393 F.3d

12  1068, 1076 (9th Cir. 2005).  Additionally, the Court may take judicial notice of facts "not subject

13  to reasonable dispute . . . [that] can be accurately and readily determined from sources whose

14  accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  In the context of a motion to

15  dismiss claims based upon allegedly misleading product labels, the Court may take judicial notice

16  of the images depicting the product labels at issue, *Von Koenig v. Snapple Beverage Corp.*, 713 F.

17  Supp. 2d 1066, 1073 (E.D. Cal. 2010), without having to convert the motion to dismiss into a

18  motion for summary judgment.  *See Knievel*, 393 F.3d at 1076.

19         Plaintiff's complaint extensively refers to the contents of the product label, relying on the

20  packaging language and imagery in each claim.  (*See generally* Doc. 1.)  Because Plaintiff

21  incorporated by reference the front label in her complaint, *see Knievel*, 393 F.3d at 1076, the

22  Court will take judicial notice of the entire package imagery underlying the alleged product

23  misrepresentation claims, *see Von Koenig*, 713 F. Supp. 2d at 1073.[1]  However, the Court's

24  judicial notice "extends only to the existence of these documents and not to their substance,

25  which may contain disputed or irrelevant facts."  *Givens v. Newsom*, 629 F. Supp. 3d 1020, 1024

26  (E.D. Cal. 2022).

27  ///

28  ───────────────────
[1]  Plaintiff does not object to Defendant's request for judicial notice.  (*See* Doc. 15 at 9 n.5.)

2

1

#### IV.    LEGAL STANDARD

2        Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

3    the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R.

4    Civ. P. 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the

5    complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss,

6    "all allegations of material fact are taken as true and construed in the light most favorable to the

7    non-moving party."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir.

8    2020).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be

9    accepted as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

10        A claim is facially plausible "when the plaintiff pleads factual content that allows the

11    court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

12    *Iqbal*, 556 U.S. at 678.  A complaint that offers mere "labels and conclusions" or "a formulaic

13    recitation of the elements of a cause of action will not do."  *Id.*; *see also Moss v. U.S. Secret Serv.*,

14    572 F.3d 962, 969 (9th Cir. 2009).  "Dismissal is proper only where there is no cognizable legal

15    theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro*,

16    250 F.3d at 732.

17        If the court dismisses the complaint, it "should grant leave to amend even if no request to

18    amend the pleading was made, unless it determines that the pleading could not possibly be cured

19    by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making

20    this determination, the court should consider factors such as "the presence or absence of undue

21    delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

22    undue prejudice to the opposing party and futility of the proposed amendment."  *Moore v.

23    Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

24

#### V.    DISCUSSION

25        Plaintiff alleges eight causes of action against Defendant: (1) violation of California's

26    Consumers Legal Remedies Act; (2) violation of California's Unfair Competition Law; (3)

27    violation of California's False Advertising Law; (4) breach of implied warranty under California

28    Commercial Code § 2314; (5) common law fraud; (6) intentional misrepresentation; (7) negligent

1  misrepresentation; and (8) quasi-contract/unjust enrichment/restitution.

2  **A.      Consumer Deception Claims**

3      Defendant moves to dismiss Plaintiff's first, second, third, fifth, sixth and seventh claim

4  on that grounds that a "reasonable consumer" would not be deceived by the "made with real

5  chicken, pork, & duck" label.  (*See generally* Doc. 8.)  For claims arising under California's

6  CLRA, UCL, and FAL, the plaintiff must show that reasonable consumers are likely to be

7  deceived by the label. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  The

8  reasonable consumer test requires the plaintiff to "show that members of the public are likely to

9  be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotations omitted).  This

10 standard also applies to common law fraud, intentional misrepresentation, and negligent

11 misrepresentation claims.  *See Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)

12 (explaining that common law fraud requires showing that the label would mislead a reasonable

13 person); *Morn v. Am. Messaging Servs., LLC*, No. SACV 14-1635-DOC, 2014 WL 12660529, at

14 *2 (C.D. Cal. Nov. 18, 2014) (explaining that intentional misrepresentation requires the same

15 elements and standard as common law fraud); *Girard v. Toyota Motor Sales, U.S.A., Inc.*, 316

16 Fed. App'x. 561, 562 (9th Cir. 2008) (holding that the "justifiable reliance" element of negligent

17 misrepresentation equates to the "reasonable consumer" standard).

18     "Whether a reasonable consumer would be deceived by a product label is generally a

19 question of fact not amenable to determination on a motion to dismiss." *Girard*, 316 Fed. App'x

20 at 562.  However, the court may determine, as a matter of law, that the alleged violations of the

21 CLRA, UCL, and FAL are simply not plausible. *See, e.g.*, *Chong v. Nestle Water N. Am., Inc.*,

22 No. 20-56373, 2021 WL 4938128, at *1 (9th Cir. Oct. 22, 2021) ("[T]his Court may conclude on

23 the pleadings that no reasonable consumer would be misled by any of the product labels at issue

24 in this suit."); *Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456-SBA, 2010 WL 2673860, at *3

25 (N.D. Cal. July 2, 2010) (holding that a reasonable consumer would not be deceived into

26 believing that "Crunch Berries" cereal derived significant nutritional value from fruit).

27 "Dismissal is appropriate when 'the advertisement itself [makes] it impossible for the plaintiff to

28 prove that a reasonable consumer [is] likely to be deceived.'" *Whiteside v. Kimberly Clark Corp.*,

1   108 F.4th 771, 778 (9th Cir. 2024) (quoting *Williams*, 552 F.3d at 938–39.)  The reasonable

2   consumer test therefore "requires more than a mere possibility that [the defendant's] label 'might

3   conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"

4   *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Proctor & Gamble Co.*¸105 Cal. App. 4th 496, 508

5   (2003)).  "Rather, the reasonable consumer standard requires a probability that a significant

6   portion of the general consuming public or of targeted consumers, acting reasonably in the

7   circumstances, could be misled."  *Id.*

8        The Ninth Circuit has articulated an approach for evaluating packaging for consumer

9   deception claims at the pleadings stage.  *See Whiteside*, 108 F.4th at 778–82.  A court must begin

10  its analysis with the front label, as reasonable consumers are not expected to look beyond

11  unambiguous misleading representations on the front label to determine the truth from the rest of

12  the packaging, especially the ingredients list.  *Id.* at 778.  Thus, "if a product's front label is

13  plausibly misleading to reasonable consumers, then the court does not consider the back label at

14  the pleadings stage."  *Id.*  However, the front label must "convey[] a concrete and unambiguous

15  meaning to a reasonable consumer" to foreclose consideration of the back label.  *Id.* at 782; *see*

16  *also McGinty v. Proctor & Gamble Co.*, 96 F.4th 1093, 1098 (9th Cir. 2023) ("[T]he front label

17  must be *unambiguously deceptive* for a defendant to be precluded from insisting that the back

18  label be considered with the front label" at the pleading stage (emphasis added)).  "[A] front label

19  is not ambiguous simply because it is susceptible to two possible meanings; a front label is

20  ambiguous when reasonable consumers would necessarily require more information before

21  reasonably concluding that the label is making a particular representation."  *Whiteside*, 108 F.4th

22  at 781 (quoting *McGinty*, 96 F.4th at 1097).  Only when the court determines the front label is

23  ambiguous may the Court look to the back label at the pleadings stage.  *Id.* at 781.

24       The Dream Kabobz front label makes various representations: (1) "Dog Chews With

25  Vegetables & Chicken"; (2) "Made With Real Chicken, Pork & Duck"; (3) "Vitamin & Mineral

26  Enriched"; and (4) "The Healthy Alternative to Rawhide."  (Doc. 9-2 at 2.)  It also bears cartoon

27  images of chicken, pork, and duck; and a package window for consumers to see the product prior

28  to purchase.  (*Id.*)  Viewing the allegations in a light most favorable to Plaintiff, through that

5

window, consumers can see portions of a substance that is formed and colored to look like meat, three of which are wrapped around a lighter-colored stick to form each treat.  (Doc. 9-2 at 2.)  In again viewing the allegations in a light most favorable to Plaintiff, a reasonable consumer could conclude that the meat-like portion of the treat is real meat or at least contains real meat, given the representations on the front label that the product is "Made With Real Chicken, Pork & Duck" and "With Vegetables & Chicken."  (*Id.*)  The real question here is whether Plaintiff has plausibly alleged that the front label would unambiguously mislead a reasonable consumer into concluding that the treats were made predominantly[2] with meat.  Plaintiff argues she has done so.  (Docs. 1, ¶ 19; 15 at 10.)  Defendant argues that the totality of the representations on Dream Kabobz's front label unambiguously indicates that meat is not the first ingredient, but in the alternative, the front label is ambiguous, and the Court should consider the back ingredients list to dispel any alleged misrepresentations.  (Doc. 8-1 at 11–12.)

The analysis of consumer deception claims "proceeds along a spectrum"—on one end, "plainly fanciful or unreasonable interpretations of a product's labeling are subject to dismissal," but on the other end, unambiguously false "front-label claims cannot be cured by contradicting back-label statements as a matter of law."  *See Meza v. Coty, Inc*., No. 22-CV-05291-NC, 2023 WL 3082346, at *9 (N.D. Cal. Apr. 24, 2023) (citations omitted); *see also La Barbera v. Ole Mexican Foods, Inc.*, 2023 WL 4162348, at *12 (C.D. Cal. May 18, 2023) (citations omitted).  "Between these poles, ambiguous front-label claims that are consistent with back-label claims permit courts greater latitude to consider the surrounding context of the product and packaging to determine if the claims are misleading."  *Meza*, 2023 WL 3082346, at *9.

In *Whiteside*, the front label of a line of baby wipes bore the phrase "plant-based" along with the term "natural care" and images of plants and trees.  108 F.4th at 781.  Though the representations made on that front label "could be interpreted in various ways," they "plausibly convey[ed] a concrete and unambiguous meaning to a reasonable consumer: that the product is

---

[2]  Plaintiff uses "predominantly" and "primarily" interchangeably.  Though Plaintiff's complaint and briefing point out that other, similar products contain meat as the "first" ingredient, (*see* Docs. 1 at 7; 15 at 7–9), viewing the complaint in the light most favorable to Plaintiff, the Court will presume she is not necessarily equating "primary," "predominant" with "first."

1    entirely plant-based and exclusively contains 'natural' materials." *Id*. at 782.  Therefore, the front

2    label was not ambiguous, so the back label was not considered.  *Id*.

3          On the other side of the spectrum, in *Trammel v. KLN Enterprises, Inc.*, the front label of

4    a candy package stated, "Natural Strawberry & Raspberry Flavored Licorice" and "Naturally

5    Flavored" along with depictions of fruits next to images of the brightly colored candy on the

6    package.  2024 WL 4194794, at *6 (S.D. Cal. Sept. 12, 2024).  The court indicated that "nowhere

7    on the front label does it affirmatively state that the product is 'all natural,' '100% natural,' or

8    'free of artificial ingredients,'" and as such, "a reasonable consumer would not interpret the front

9    label as unambiguously representing that [the candy] does not contain artificial ingredients."

10   Thus, the court held that "nothing about this product—a brightly colored, shelf-stable licorice

11   candy—would lead a reasonable consumer to conclude that [the candy] is free of artificial

12   ingredients when the product labels make no affirmative representations saying as such." *Id.*

13   Therefore, the front label was ambiguous, necessitating consideration of the back label.  *Id.*

14   Similarly, in *Bryan v. Del Monte Foods, Inc.*, the Ninth Circuit analyzed the claim that "fruit

15   cups, containing the phrase 'fruit naturals,' falsely lead consumers to believe that all ingredients

16   in the fruit cups are natural."  2024 WL 4866952, at *1 (9th Cir. 2024).  The court analyzed the

17   phrase "fruit naturals," paired with the phrase "in light syrup" and a picture of the fruit in the

18   cups.  *Id.*  The court held that the front label was ambiguous because "[t]aken together with the

19   rest of the front label, including 'fruit naturals,' the 'syrup' phrase affirmatively conveys that,

20   although the fruit itself is natural, the syrup may not be." *Id.* (emphasis in original).  Thus, the

21   court turned to the back label to determine that the fruit cups made no misrepresentations.  *Id.*

22         The front label here indicates that the dog chews are "Made With Real Chicken, Pork &

23   Duck," a representation bolstered by cartoon depictions of those meats.  (Doc. 9-2 at 2.)  The

24   package window allows consumers to see meat-like material wrapped around a rawhide-

25   alternative stick.  (*Id.*)  If these had been the only representations on the front label, the analysis

26   might be very close, but the Dream Kabobz front label predominantly indicates that the package

27   contains "Dog Chews With Vegetables & Chicken."  (*Id.* (emphasis added).)  This representation

28   muddies the waters sufficiently to render the front label ambiguous.  Like *Bryan*, where the

1   totality of the front label led the Ninth Circuit to conclude "reasonable consumers would

2   necessarily require more information before they could reasonably conclude" that the fruit cup

3   front label makes a specific factual representation, 2024 WL 4866952, at *1, the inclusion of the

4   word "vegetables" before "chicken" on the Dream Kabobz front label demands a similar result.

5   A reasonable consumer could not concretely and unambiguously be deceived into believing that

6   the dog chews are predominantly made of meat given the label's representations about vegetables

7   as an ingredient. *See Whiteside*, 108 F.4th at 778–82. Rather, the Dream Kabobz label presents

8   exactly the situation where a reasonable consumer would necessarily require more information

9   before concluding how much meat the product contained. Thus, the Court must turn to the back

10  label for clarification.

11       The out-of-circuit authority cited by Plaintiff in support of a contrary conclusion is

12  distinguishable. (Doc. 15 at 8.) *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK),

13  2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016), concerned, among other things, a claim that the

14  packaging and television campaign for "Beggin Strips" dog treats were misleading. After

15  analyzing the package—including the front and back labels and the product itself—and the

16  television advertisements,[3] the court concluded that the plaintiff had plausibly alleged that a

17  reasonable consumer could find "Beggin Strips" dog treats were predominantly made of real

18  bacon. 2016 WL 4367991, at *14–16.[4] Though it found the case a "close one," the court reached

19  this conclusion based on the plaintiff's "impression from the Products' scent and appearance, the

20  television commercial campaign's repeated references to 'bacon,' or, perhaps, 'beggin', and the

21  package's prominent depiction of bacon." *Id.* Thus, the court held that for the first category, the

22  claim could not be dismissed as a matter of law.[5]

23

24  [3] The television campaign "feature[d] comical videos of dogs enthusiastically musing about their strong desire for
     bacon and the Products"; the packaging made various representations such as: "Made with real bacon," a picture of
     crispy bacon encompassing half the package, a frying pan with pieces of sizzling bacon, and numerous uses of

25  "BacoNology 101"; and the product itself is "cut, shaped, colored, and textured to look like it is real bacon, and the
     product is flavored to smell just like real bacon." 2016 WL 4367991, at *2.

26  [4] *Blue Buffalo Co. Ltd. v. Nestle Purina Petcare Co.*, No. 4:15CV384 RWS, 2015 WL 3645262, at * 7 (E.D. Mo.
     June 10, 2015), another case relied upon by Plaintiff, reached a similar conclusion about Beggin Strips in the context

27  of a Lanham Act claim.

     [5] Separately, the *Kacocha* court concluded that the representation "Made with real bacon" under the "Ingredients &

28  Nutrients" heading on the product website was not misleading because it "is true, and no reasonable consumer would
     take this comment in isolation to mean that bacon was the sole or one of the main ingredients." 2016 WL 4367991,

1    Even if the analytical approach taken in *Kacocha* is consistent with the approach

2  articulated by the Ninth Circuit in *Whiteside*, the packaging at issue in *Kacocha* is

3  distinguishable.  Notably, the "Beggin Strips" packaging did not contain any language that

4  detracted from the overall bacon-dominated theme.  Here, by contrast, the Dream Kabobz front

5  label prominently mentions ingredients other than meat.  That is the source of the ambiguity and

6  the reason why the Court finds that Plaintiff has not alleged that the Dream Kabobz front label is

7  unambiguously misleading.

8    "[W]hen 'ambiguity' on the front of the label 'can be resolved by reference to the back

9  label,' a reasonable consumer would not be deceived."  *Kim v. Bluetriton Brands, Inc.*, No.

10  22-56063, 2024 WL 243343, at *1 (9th Cir. Jan. 23, 2024) (quoting *McGinty*, 96 F.4th at

11  1098–99).  A reasonable consumer necessarily requiring more information as to the

12  predominance of meat in the dog chews could simply refer to the full ingredients list on the back

13  label.  *See Whiteside*, 108 F.4th at 778.  The ingredients list shows that the seventh, eight, and

14  ninth ingredients out of thirty-seven ingredients are chicken, pork, and duck respectively.  (Doc.

15  9-2 at 2.)  The back label ingredients list, paired with the representations on the front label, makes

16  "it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."

17  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).  The Court concludes that in

18  reviewing the entirety of the package a reasonable consumer could not be misled to believing that

19  the first ingredient of the dog chews is meat, and thus, Defendant's motion to dismiss the first,

20  second, third, fifth, sixth, and seventh claims are **GRANTED**.[6]  Based on the undisputed nature

21  of the packaging, it appears that amendment could not remedy the absence of a consumer

22  deception claim. Thus, the motion is granted with prejudice and without leave to amend.

23  **B.    Breach of Implied Warranty Claim**

24    Plaintiff alleges that the label "made an implied promise that the Product is predominantly

25  _____

at *15.

26  [6]  Plaintiff seeks only injunctive and equitable relief for her various consumer deception claims.  (Doc. 1, ¶¶ 58, 73, 80.)  Defendants separately challenge whether such relief is available.  (Doc. 81- at 15–20.)  Because the presence of

27  an actionable misrepresentation is a prerequisite to any form of relief, the Court finds it unnecessary to address these independent arguments for dismissal.  Likewise, because dismissal is grounded on the absence of an actionable

28  misrepresentation, the Court is not persuaded by Plaintiff's argument that these claims should be dismissed without prejudice so she may litigate her injunctive relief claims in state court.  (*See* Doc. 15 at 12 n. 5.)

made with meat," and because the product is not, "Defendant has breached its implied warranty of merchantability."  (Doc. 1, ¶¶ 86–87.)  Defendant contends that Plaintiff fails to "allege any 'promise' creating a warranty" by merely realleging that the alleged misrepresentation rises to the level of an implied warranty.  (Doc. 8-1 at 20.)  "A plaintiff who claims a breach of implied warranty of merchantability must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'"  *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)).  Plaintiff has not alleged any facts that purport to show that the dog chews were not fit for ordinary use.  (*See generally* Doc. 1.)  Plaintiff simply reiterates that the dog chews were "not predominantly made with meat" and thus "consumers did not receive the goods as impliedly warranted by Defendant to be merchantable."  (Doc. 1, ¶¶ 86–88.)  This does not demonstrate that the dog chews were not fit for use.

"[C]ourts have determined that an implied warranty of merchantability claim may rely solely on alleged affirmative representations made by the defendant on the product's label."  *Weiss v. Trader Joe's Co.*, No. 8:18-01130, 2018 WL 6340758, at *8 (C.D. Cal. Nov 20, 2018) (quotations omitted), *aff'd*, 838 F. App'x 302 (9th Cir. 2021).  However, the Court finds that the label did not affirmatively represent that the dog chews were predominantly made from meat.  Accordingly, Defendant's motion to dismiss the implied breach of warranty claim is **GRANTED**.  Plaintiff has generically requested leave to amend, (Doc. 15 at 14), though she does not hint at how this claim could be amended under the circumstances  Based on the undisputed nature of the packaging, it appears that amendment could not remedy the absence of a consumer deception claim.  Thus, the motion is granted with prejudice and without leave to amend.

## C.    Quasi-Contract/Unjust Enrichment/Restitution Claim

Plaintiff alleges that "Defendant has intentionally and recklessly made misleading representations" and because Plaintiff "did not receive the full value of the benefit conferred upon Defendant," "it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them."  (Doc. 1, ¶¶ 113–19.)  Defendant argues that because Plaintiff's quasi-contract/unjust enrichment/restitution claim is wholly predicated on the alleged

1   misrepresentation, and Plaintiff failed to sufficiently plead an actionable misrepresentation, this

2   claim must also be dismissed.  The Court agrees.

3          The court "may construe an unjust enrichment claim 'as a quasi-contract claim seeking

4   restitution.'"  *Shin v. Campbell Soup Co.*, No. CV 17-1082-DMG, 2017 WL 3534991, at *8 (C.D.

5   Cal. Aug. 9, 2017) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221,

6   231 (2014)).  "This doctrine applies where plaintiffs, while having no enforceable contract,

7   nonetheless have conferred a benefit on defendant which defendant has knowingly accepted

8   under circumstances that make it inequitable for the defendant to retain the benefit without paying

9   for its value."  *Id.*  "However, a restitution claim based on fraud or consumer protection claims

10  must nonetheless be dismissed if the plaintiff fails to sufficiently plead an actionable

11  misrepresentation."  *In re Apple Processor Litig.*, No. 18-cv-00147-EJD, 2022 WL 2064975, at

12  *12 (N.D. Cal. June 8, 2022), *aff'd* 2023 WL 5950622 (9th Cir. Sep. 13, 2023).  Plaintiff's claim

13  for quasi-contract/unjust enrichment/restitution is based on the same "misleading representations"

14  that she alleges as the basis for her other claims.  Thus, Plaintiff's quasi-contract/unjust

15  enrichment/restitution claim fails for the same reason that her other claims fail: the label does not

16  misrepresent that the dog chews are predominantly made with meat.  (*See* Doc. 9-2 at 2.)  As

17  Plaintiff fails to allege that any statements on the dog chew labeling were untrue, Defendant's

18  motion to dismiss Plaintiff's quasi-contract/unjust enrichment/restitution claim is **GRANTED**.

19  Because this claim is entirely premised on the asserted misrepresentation, the Court again fails to

20  see how the claim could be amended to survive dismissal.  Thus, the claims is dismissed without

21  leave to amend.

22                                    **CONCLUSION**

23          For the reasons set forth above:

24          1.   Defendant's request for judicial notice is **GRANTED**.

25          2.   Defendant's motion to dismiss is **GRANTED** without leave to amend.

26  ///

27  ///

28  ///

3.   The Clerk of Court is directed to **CLOSE THIS CASE**.

IT IS SO ORDERED.

Dated:   **December 22, 2024**

_____
UNITED STATES DISTRICT JUDGE

12